USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-22-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN ASSADI, ESQ.,

                Plaintiff,

- against -

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                Defendant.

**OPINION AND ORDER**

12 Civ. 1374 (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiff John Assadi ("Assadi") brings this lawsuit pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to compel production of eight reports prepared and withheld by the United States Citizenship and Immigration Services ("CIS"), Fraud Detection and National Security Unit ("FDNS"). Before the Court is CIS's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. The Parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

For the reasons that follow, CIS's motion is **GRANTED**.

## II. BACKGROUND

Assadi submitted a FOIA request to CIS on October 11, 2011. Compl. 2. The request sought production of documents relating to communications "from and between the National Visa Center, Fraud Prevent Unit, the American Embassies/Consulates in Ankara, Istanbul and Adana, Turkey, the American Embassy in Paris[,] France, and the American Embassy in Abu Dhabi, United Arab Emirates, relating to John Assadi, John J. Assadi, or Assadi & Milstein, LLP, but <u>excluding</u> any documents or supporting documents filed or submitted by John Assadi."

*Id.* (emphasis included)

All of the documents at issue are titled Summary of Findings ("SOF") reports. The reports are developed by FDNS, which is a unit within CIS that "maintains anti-fraud and screening programs, leads information sharing and collaboration activities, and supports the law enforcement and intelligence communities." Def.'s Mem. 5.

Applications for immigration benefits are submitted to CIS and assigned to a CIS Immigration Services Offer ("CIS adjudicator") who is responsible for adjudicating the matter. *Id.* If a CIS adjudicator suspects that an application is fraudulent, the application is referred to FDNS for an investigation. *Id.* "FDNS does not have operational authority and responsibility with regards to adjudicating immigration applications or petitioner, nor does it exercise any supervisory authority over the CIS adjudicators and offices that conduct these adjudications." *Id.* After a referral, the application is investigated by a FDNS Immigration Officer (IO). *Id.* The IO memorializes his or her findings or recommendations in a SOF report. *Id.*

On November 21, 2011, CIS informed Assadi that twenty-three pages of documents were responsive to the request but were being withheld pursuant to exemptions under 5 U.S.C. §§ 552(b)(5), (b)(6), & (b)(7)(C). Compl. 2. CIS did not include a *Vaughn* index with its November 21 letter.[1] *Id.* at 3. Assadi appealed CIS's determination by letter dated November 29, 2011. *Id.* at 4. CIS denied Assadi's appeal on January 12, 2012, and stated that it had "determined that the National Records Center properly withheld certain information that is protected from disclosure under [FOIA] and that this information is not appropriate for discretionary release." *Id.* Assadi then filed this action to compel CIS to produce the SOFs.

---

[1] CIS later delivered a *Vaughn* index to Assadi on June 8, 2012. Def. Mem of Law in Supp. of Gov't's Mot. for Partial Summ. J. 3.

CIS argues in its summary judgment motion that FOIA exemption 5 is applicable because the SOFs contain "deliberations about possible fraud in connection with specific applications for immigration benefits," and that the SOFs "reflect the specific analytical methods and views of the FDNS officer." Def.'s Mem of Law in Supp. of Gov't's Mot. for Partial Summ. J. ("Def.'s Mem.") 1. CIS also argues that the SOFs are exempt from production because exemption 6 and 7(C) apply to the private information of the third-parties which is included in the SOFs. *Id.*

### III. DISCUSSION

#### A. Summary Judgment Standard and FOIA

"When responding to a FOIA request, a federal agency must 1) conduct an adequate search using reasonable efforts, 2) provide the information requested, unless it falls within a FOIA exemption, and 3) provide any information that can reasonably be segregated from the exempt information." *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve System*, 649 F. Supp. 2d 262, 270 (S.D.N.Y. 2009); *accord* 5 U.S.C. §§ 552(a)(3), 552(b). FOIA is designed to "promote honest and open government, and to assure the existence of an informed citizenry in order to hold the governors accountable to the governed." *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. United States Dep't of Justice*, ("*Brennan Ctr.*"), 697 F.3d 184, 194 (2d Cir. 2012). "FOIA strongly favors a policy of disclosure." *Id.* In light of FOIA's broad disclosure policy, the exemptions are to be construed narrowly. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is "the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P.*, 649 F. Supp. 2d at 271. Summary judgment is proper "if there is no genuine dispute as to any material fact and the

moving party is entitled to judgment as a matter of law." *Brennan Ctr.*, 697 F.3d at 193 (*citing* Fed. R. Civ. P. 56(a)). The "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

Motions for summary judgment in the FOIA context are unique in that the government's affidavits are accorded a presumption of good faith. *Id.* "[S]o long as such affidavits supply facts indicating that the agency has conduct[ed] a thorough search and give[s] reasonably detailed explanations why any withheld documents fall within an exemption," the burden of proof will be satisfied and summary judgment is appropriate without discovery. *Id.*; *accord Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). An agency's determination that documents are under an enumerated exemption, however, is afforded no deference. *Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

To carry their burden, agencies also generally submit a *Vaughn* index, which is an "itemized listing of the non-disclosed records, describing each record and portion withheld, and providing a detailed justification for the agency's withholding, specifying the [applicable] FOIA exemption." *Nat'l Day Laborer Org. Network v. United States Immigration Customs Enforcement Agency*, 811 F. Supp. 2d 713, 733 (S.D.N.Y. 2011). "Conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases." *Coastal States Gas Corp. v. Department of Engery*, 617 F.2d 854, 861 (1980). A *Vaughn* index allows the opposing party "to contest the affidavit in an adversarial fashion," and to permit a court to effectively review the agency's redactions. *Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 293 (2d Cir. 1999).

## B.   Deliberative Process Privilege

FOIA exemption 5, frequently referred to as the "deliberative process privilege," exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Congress "intended to incorporate into the FOIA all the normal civil discovery privileges." *Hopkins v. United States Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). When enacting FOIA, Congress recognized that "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to operate in a fishbowl." *Id.* at 84; *accord Env't Prot. Agency v. Mink*, 410 U.S. 73, 87 (1973).

Documents within the privilege must be (1) "'predeicisonal,' that is, prepared in order to assist an agency decisionmaker in arriving at his decision, and [(2)] 'deliberative,' that is, actually related to the process by which policies are formulated." *Hopkins*, 929 F.2d at 84. The privilege thus protects the "decision making processes of government agencies, and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Labor Relations Bd. v. Sear, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

Here, the SOFs are protected by the deliberative process privilege. First, the FDNS does not have decision-making authority – the decision to award immigration benefits lies with the CIS adjudicator, not the IO. The SOFs have "no operative independent of" the CIS adjudicator's review of the applicant's petition. *See Grumman*, 421 U.S. at 187. Thus, because the FDNS lacks decision-making authority, the SOFs are necessarily predecisional. *See Hopkins*, 929 F.2d at 85. Moreover, according to the appended declarations, SOFs contain deliberations and findings associated with the fraud investigation that may include professional opinions, which

5

are considered predecisional. *Id.* (holding that documents containing professional opinions and recommendations as to whether an agency should take action were predecisional). Second, the sole purpose of a SOF is to determine whether fraud exists and to recommend a course of action, i.e., considering the application solely on its merits. The SOFs enable the CIS Adjudicator to consider all relevant facts when determining whether immigration benefits should be awarded. In light of the role a SOF has in the adjudication process, it is also deliberative and protected by the privilege. *See Grumman*, 421 U.S. at 185-86; *see also Hopkins*, 929 F.2d at 85.

Relying on language found in *Coastal States Gas Corp. v. Department of Engery*, 617 F.2d 854, 868 (D.C. Cir. 1980), Assadi argues that CIS has not met its burden because the SOFs are "[o]pinions about the applicability of existing policy to a certain set of fact." Pl.'s Opp'n 5. In *Coastal States*, the court held that internal memoranda detailing the applicability of agency policy in hypothetical situations were not protected under the deliberative process privilege. The court held that the memoranda constituted "secret law" and its disclosure was directly within the purposes of FOIA. 617 F.2d at 867-68. SOFs, however, are distinguishable from the memoranda at issue in *Coastal States*. SOFs are created to assist the CIS adjudicator in reaching a decision as to whether immigration benefits will be awarded, whereas the memoranda in *Coastal States* were agency interpretations of regulations that were not made public. *Id.* at 857. There is an important distinction between documents that are interpretations of already existing agency policy and documents developed to assist an agency in reaching a decision. *Compare Coastal States*, 617 F.2d at 857, *with Azmy v. United States Dep't of Defense*, 562 F. Supp. 2d 590, 604 (S.D.N.Y. 2008).

Finding that the deliberative process privilege applies does not end the analysis. Courts must determine whether any part of the document at issue is segregable. *See* 5 U.S.C. § 552(b).

6

Purely factual observations are not protected by the privilege, unless those observations are "'inextricably intertwined' with the privileged opinion [or] recommendation[] such that disclosure would compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5." *Hopkins*, 929 F.2d at 85; *accord Mink*, 410 U.S. at 92).

Determining if any portions of an exempt-document are segregable begins with consideration of the document as a whole. *Lead Indus. Ass'n, Inc. v. Occupational Safety and Health*, 610 F.2d 70, 85. In other words, courts must consider factual "segments in the context of the whole document and that document's relation to the administrative process which generated it." *Id.* at 86. Disclosure of factual material is permitted only if it will not compromise the "private remainder of the document." *Id.* at 85 (*qouting Mink*, 410 U.S. at 91). "[T]he agency has the burden of establishing the necessity of keeping its records' factual observations undisclosed." *Id.*

CIS's *Vaughn* index explains that the SOFs contain factual information specifically chosen by extracting pertinent factual material from a larger body of factual material. Def.'s Mem, Eggleston Decl., Ex. F, G. It argues that withholding the entire SOF is proper because the document is predominantly evaluative and contains discussions involving selective factual material. Reply Mem. of Law in Further Supp. Of Gov't's Mot. for Partial Summ. J. ("Def.'s Reply") 6.

After an *in camera* review, this Court concludes that the SOFs are "predominantly evaluative," *see Tigue*, 312 F.3d at 82, and disclosure of the purely factual material "would reveal the deliberative process of summarization itself by demonstrating which facts" in the fraud investigation process "were considered significant by the decisionmaker and those assisting her." *Lead Indus. Ass'n, Inc.*, 610 F.2d at 85. Each SOF is developed by an IO charged

with the task of assisting the CIS adjudicator in rendering a decision by evaluating available factual material for evidence of fraud. All facts within an SOF are selective and deliberate, and disclosure would shed light on an otherwise exempt evaluation process. *See id.* at 86. The factual information within a SOF is unsegregable because it is "inextricably intertwined" with the overall CIS adjudicative process.

### C.    The Privacy Exemptions

FOIA exemption 6 prohibits disclosure of "personnel and medical files and similar files . . . which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § (b)(6). Finding that exemption 6 is applicable requires a two step inquiry. First, courts must determine whether the personal information in dispute is contained in a file that is similar to personnel or medical record. Files are generally considered "similar" if they contain the type of information found within personnel or medical records. *Wood v. Fed. Bureau of Investigation*, 432 F.3d 78, 86 (2d Cir. 2005). Second, courts must "balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a 'clearly unwarranted invasion of personal privacy.'" *Id.* Individuals have a private interest in their information that is contained in a government document. *Amnesty Intern. U.S.A. v. Central Intelligence Agency*, No. 07 Civ. 5435, 2008 WL 2519908, at *16 (S.D.N.Y. June 19, 2008). The public has an interest in determining how its government functions.

Exemption 6 is applicable to "all information which applies to a particular individual." *Id.*; *accord United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). The exemption precludes disclosure of "names and addresses, the release of which would create a palpable threat to privacy." *Id.*

8

FOIA exemption 7 exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such . . . information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Although both exemption 6 and 7 are aimed at protecting the privacy of personal information, "the standard for evaluating the privacy interests implicated in records compiled for law enforcement purposes under Exemption 7(C) is 'somewhat broader' than that applicable under Exemption 6 to personnel, medical, or other files." *Associated Press v. United States Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008); *accord United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). The withholding agency has the burden of showing that a document falls within the exemption. *Associated Press I*, 549 F.3d at 65. "Reasonably detailed affidavits or declarations explaining why any withheld documents fall within a particular exemption are sufficient to sustain the agency's burden." *Id.*

The threshold question of whether the SOFs are "similar" records under FOIA was addressed by the Second Circuit in *Wood*. The court held that "[e]xemption 6 applies to any personal information contained in files similar to personnel or medical files, such as administrative investigative records." *Wood*, 432 F.3d at 86. Here, the SOFs are administrative investigative records.

Once a file is considered "similar," the balancing test must be applied, where the private interest is balanced against the public interest. An individual's privacy interest is construed broadly and "encompass[es] all interest involving 'the individual's control of information concerning his or her person.'" *Hopkins*, 929 F.2d at 87. The public's interest, on the other hand, is construed narrowly and only considers "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or

9

otherwise let citizens know what their government is up to." *Wood*, 432 F.3d at 88. Disclosure of a government employee's private information depends on the likely consequences of disclosing the information. *Id.* The employee's rank can either heighten or diminish the public's interest. *Id.*; *see also Nat'l Day Laborer Org. Network*, 811 F. Supp. 2d at 748.

CIS argues that "[d]isclosure of the authors' and subjects' identities would associate them with fraud suspicions and could result in unwarranted contact or harassment from members of the public or media, or a stigmatizing effect on their personal or professional character." Def.'s Mem 13, Eggleston Decl., Ex. F. It is clear that government employees in investigative functions have a recognized interest in protecting their identities out of fear of embarrassment or harassment. *See Wood*, 432 F.3d at 88-89; *see also Halpern*, 181 F.3d at 297. The presumption of good faith afforded to CIS's declarations is not disputed by Assadi.

The competing public interest does not outweigh an IO's private interest because disclosure will not "shed light" on how the government conducts business. Given IOs are responsible for only investigating and creating documents that summarize and evaluate their findings, and the lack of decision-making authority afforded to them, disclosure of their names is not likely to shed light on how the CIS adjudicator conducts the government's business. "The public's interest in knowing the identities of the [investigators] . . . is insufficient to overcome the employees' interest in preventing the public disclosure of their names." *Wood*, 432 F.3d at 88.

Assadi argues that the private exemptions should not apply to the applicants for immigration benefits. He maintains that disclosure is appropriate because he is the attorney of record for the applicants and that the "CIS Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, gives consent to the disclosure of any record pertaining

10

to the applicant in any system of records of USCIS, USCBP, or USICE, to the attorney of record on the form." Pl. Opp'n. 6. The Court disagrees.

Assadi's status as counsel of record to the individuals who are the subjects of the SOFs does not promote the public's interest in disclosure. *See id.* Moreover, CIS Form G-28 explicitly states that it may not be used for purposes of FOIA requests. *See* Decl. of Rakhel Speyer Milstein, Ex. A, Form G-28 at 2. Requesting information of a third party is governed by 6 C.F.R. § 5, which requires written consent from the third party or proof of death. *See* 6. C.F.R. § 5.3. Assadi has not provided such written consent.

## IV.  CONCLUSION

The Court finds that the SOFs were properly withheld under exemption 5. The Court also finds that exemption 6 and 7(C) apply to the personal information for both the government investigators and the third parties within the SOFs. CIS's motion for partial summary judgment is, therefore, **GRANTED**. The Clerk of the Court is directed to close this motion [Docket No. 10].

**SO ORDERED this 22nd day of January 2013**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge