UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN ASSADI, ESQ.,

                **Plaintiff,**

- against -

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                **Defendant.**

**OPINION AND ORDER**

**12-CV-1374 (RLE)**

**RONALD L ELLIS, U.S.M.J.:**

## I. INTRODUCTION

On February 23, 2012, Plaintiff John Assadi, Esq. ("Assadi") filed the Complaint in this action against Defendant United States Citizenship and Immigration Services ("CIS"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and seeking declaratory and injunctive relief. On May 30, 2012, the Parties consented to the jurisdiction of the undersigned. Before the Court is CIS's Motion for Summary Judgment. For the following reasons, CIS's motion is **GRANTED**.

## II. BACKGROUND

On October 11, 2011, Assadi submitted a request for documents under FOIA to the CIS National Records Center. Assadi sought production of documents relating to communications "from and between the National Visa Center, Fraud Prevention Unit, the American Embassies/Consulates in Ankara, Istanbul and Adana, Turkey, the American Embassy in Paris [,] France, and the American Embassy in Abu Dhabi, United Arab Emirates, relating to John Assadi, John J. Assadi, or Assadi & Milstein, LLP, but excluding any documents or supporting documents filed or submitted by John Assadi." (Doc. No. 1 at 2.) Assadi temporally limited his

request to January 1, 2009, through October 11, 2011. (*Id.* at 7.) On November 21, 2011, CIS notified Assadi that it was withholding documents pursuant to 5 U.S.C. §§ 552(b)(5), (b)(6), and (b)(7)(C). (*Id.* at 13.) Assadi appealed the same day and CIS affirmed its decision on January 12, 2012. (*Id.* at 19.)

On February 23, 2012, Assadi filed the present Complaint alleging that CIS failed to provide responsive records under FOIA, improperly relied on FOIA exemptions, and failed to provide a *Vaughn* index. (Doc. No. 1) On April 2, 2012, CIS filed its Answer. (Doc. No. 5) CIS provided a *Vaughn* index to Assadi on June 8, 2012, and filed it first Motion for Partial Summary Judgment on August 3, 2012. (Doc. No. 10) In the motion, CIS stated that it had decided on July 23, 2012, to undertake an additional search for responsive documents, and that the search would be completed by August 24, 2012. (*Id.*) On August 15, 2012, Assadi filed its response to CIS's motion, (Doc. No. 13) and on August 20, 2012, CIS filed its reply. (Doc. No. 17) The Court granted CIS's Motion for Partial Summary Judgment on January 22, 2013. (Doc. No. 18)

On July 11, 2013, the Parties appeared before the Court for a status conference to address CIS's failure to produce the remaining responsive documents to Assadi. At the conference, the Court orally ordered CIS to produce all remaining documents to Assadi by August 23, 2013, and ordered Assadi to file any objections to the production by August 30, 2013. On July 12, 2013, the Court issued a written order embodying its oral order, and further ordered CIS to submit an affidavit by July 26, 2013, detailing the efforts it had made to fulfill its statutory duty to produce responsive documents to Assadi, including an explanation for the delayed production. (Doc. No. 19) CIS timely submitted the affidavit. (Doc. No. 22) On August 21, 2013, CIS produced additional documents to Assadi, along with a preliminary *Vaughn* index. (Doc. No. 35 at ¶ 4, Ex. 1.)

2

On September 23, 2013, Assadi filed a Motion for *In Camera* Review concerning pages withheld from the August supplemental production. (Doc. No. 28.) Before filing a response, CIS produced additional documents. (Doc. No. 35 at ¶ 6.) On October 8, 2013, CIS produced a "Fraud Referral Sheet" with a two-page attachment. (*Id.*) CIS asserted that this document was mistakenly omitted from the August 21 production and that responsible CIS officials had believed that the sheet had been included in the August 21 production until a page-by-page review conducted in late September. (Doc. No. 41 at ¶ 8.)

On October 24, 2013, CIS produced an additional 415 pages of responsive records with a *Vaughn* index addressing the withholdings. (Doc. No. 35 at ¶ 6.) This production consisted of emails and documents from a CIS attorney, Patsy Yung Micale. (*Id.*) CIS asserted that it discovered these documents after conducting searches at the advice of attorneys who had previously worked on matters involving Assadi at the U.S. Attorney's Office. (*Id.*) On January 8, 2015, CIS informed the Court that it believed its production was complete. (Doc. No. 41)

On November 7, 2013, CIS filed its response to Assadi's Motion for *In Camera* Review, and filed a Cross-Motion for Partial Summary Judgment. (Doc. No. 33) On September 26, 2015, the Court denied Assadi's Motion for *In Camera* Review and granted CIS's Motion for Partial Summary Judgment. (Doc. No. 59)

On January 31, 2014, CIS informed the Court that it "unexpectedly identified and located an additional group of responsive documents" and expected to begin rolling productions no later than February 3, 2014. (Doc. No. 42) CIS asserted that on January 16, 2014, while reviewing the prior 415-page production, counsel for CIS "noticed that CIS attorneys Evan Franke and James Martin appeared in the 'CC' line of certain emails in the 415-page production, and in the 'CC' line of Ms. Micale's litigation hold memorandum dated March 9, 2011." (*Id.*) Upon inquiry, CIS

3

learned that Franke and Martin had not been tasked with searching for responsive records. (*Id.*) Three rolling productions were made on February 4, 11, and 12, 2014, resulting in a total supplemental production of 429 pages. (Doc. No. 49) CIS sent Assadi a *Vaughn* index for the February productions on February 24, 2014. (Doc. No. 53 at ¶ 13.)

On April 23, 2014, CIS filed a Motion for Summary Judgment. (Doc. No. 48) Assadi filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on May 23, 2014. (Doc. No. 54) This motion included a request for *in camera* review. (*Id.* at 4) CIS filed its reply on June 5, 2014. (Doc. No. 55)

### III. DISCUSSION

#### A.     Assadi's Request for *In Camera* Review

*In camera* review in FOIA cases is at the discretion of the trial court. 5 U.S.C. § 552(a)(4)(B). The court should consider conducting *in camera* review "where the government seeks to exempt entire documents but provides only vague or sweeping claims as to why those documents should be withheld." *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 67 (2d Cir. 2008). *In camera* review is only necessary where "the government's affidavits make it effectively impossible for the court to conduct de novo review of the applicability of FOIA exemptions." *Id. See Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 75-76 (2d Cir. 2009) ("A court should only consider information *ex parte* and *in camera* that the agency is unable to make public if questions remain after the relevant issues have been identified by the agency's public affidavits and have been tested by plaintiffs."). Before ordering *in camera* review, the district court may, at its discretion, consider alternative options for eliciting additional detail from the government, including requiring supplemental *Vaughn* affidavits, permitting further discovery, or offering the government the option of submitting additional *Vaughn* affidavits for *in camera*

4

review. *Halpern v. F.B.I.*, 181 F.3d 279, 295 (2d Cir. 1999). *In camera* review is thus the exception, not the rule. *Local 3, Int'l Bhd. Of Elec. Workers, AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988).

CIS provided Assadi with *Vaughn* indexes for its two supplemental productions on October 24, 2013, and February 24, 2014. (Doc. No. 35 at ¶ 6.; Doc. No. 53 at ¶ 11) Having reviewed both indexes, the Court finds that CIS has provided sufficient detail to support its claims that the exemptions apply. *See Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 75 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)) (finding that if an agency's statements "'contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise . . . the court should not conduct a more detailed inquiry . . . .'").

Assadi argues that the Court should follow the framework set out by the D.C. Circuit in *Allen v. CIA*, (Doc. No. 54 at 4.), and consider the following factors in determining whether to conduct *in camera* review: 1) judicial economy; 2) the conclusory nature of agency affidavits; and 3) bad faith on the part of the agency. 636 F.2d 1287, 1298 (D.C. Cir. 1980), *disavowed on other grounds*, *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983)[1] Assadi does not cite any Second Circuit precedent to support his claim. However, even under the *Allen v. CIA* framework, *in camera* review is not required.

Although Assadi is correct that *in camera* review is more likely appropriate in cases where the number of documents at issue is small, *id.* at 1291, this is not the only factor a court should consider. Moreover, this factor alone is not an affirmative basis for conducting a review;

---

[1] The District of Columbia Circuit also listed the following factors, which Assadi does not address: 1) whether there are disputes concerning the content of the document; 2) whether the agency has proposed *in camera* inspection; and 3) the strong public interest in disclosure. 636 F.2d at 1298.

5

it merely suggests that review may be less burdensome than in other circumstances. As CIS argues, "*in camera* review does not serve judicial economy when the Government's declarations are perfectly adequate in their own right." (Doc. No. 55 at 9.) Assadi provides no affirmative basis for the court to review pages withheld on the basis of attorney-client privilege or attorney work product. (Doc. No. 54 at 5-6) The Court finds that CIS's *Vaughn* indexes are adequately detailed and, thus, *in camera* review for documents withheld on these bases is not warranted.

As to the documents withheld on the basis of the deliberative process privilege, Assadi argues that CIS's affidavits are conclusory because its segregability analysis is insufficient. FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subjection." 5 U.S.C. § 552(b). "[A] court may [however] decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 178 (2d Cir. 2014) (citing *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 n. 55 (D.C.Cir.1977))

CIS's declarations state that both CIS and the Department of State ("DOS") conducted a segregability analysis with respect to each document, (Doc. No. 51 at ¶ 15; Doc. No. 50 at ¶ 29), and ultimately only withheld three of the disputed pages in full. (Doc. No. 51, Ex. A) The specific example Assadi provides, a cable issued to various U.S. Government agencies,[2] is addressed in the Hackett Declaration. (Doc. No. 50 at ¶ 18.) The Declaration states that the cable was withheld in full because the document "pertains directly to the issuance or refusal of visas to enter the United States." (*Id.*) It goes on to state that "[t]he Department . . . conducted a thorough

---

[2] Contained in CIS's production at ASSADI2014REL 0004-0005

6

review of the document for the purpose of releasing any non-exempt information; however, it contains no information that may be reasonably segregated and released." (*Id.*) Assadi has an unredacted version of the cable, and argues that the redaction of the cable in its entirety, when the fourth paragraph is "easily segregable from the remainder of the document," "raises a significant concern as to whether this deficient segregability analysis and methodology were repeated elsewhere . . . ." (Doc. No. 54 at 9.) Having reviewed the supplemental Declaration of Jeffrey Gorsky, (Doc. No. 56), provided by CIS in support of its segregability analysis,[3] the Court finds that the Hackett Declaration is accurate in stating that "it contains no information that may be reasonably segregated and released." (Doc. No. 50 at ¶ 18.) CIS's decision to withhold the cable in full does not raise the significant concerns that Assadi alleges and thus, the Court finds that CIS is "entitled to the presumption that [it] complied with [its] obligation to disclose reasonable segregable material." *Conti v. DHS*, No. 12-CV-5827 (AT) WL 1274517, at *25 (S.D.N.Y. Mar. 24, 2014) (citing *Sussman v. USMS*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).

Therefore, for the foregoing reasons, Assadi's request for *in camera* review is **DENIED**.

### B. Motion for Partial Summary Judgment

#### 1. Summary Judgment Standard and FOIA

"When responding to a FOIA request, a federal agency must 1) conduct an adequate search using reasonable efforts, 2) provide the information requested, unless it falls within a FOIA exemption, and 3) provide any information that can reasonably be segregated from the exempt information." *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve System*, 649 F. Supp. 2d 262, 270 (S.D.N.Y. 2009); *accord* 5 U.S.C. §§ 552(a)(3), 552(b). FOIA is designed to

---

[3] "This record was generated based on concerns . . . relating to visa eligibility in certain cases adjudicated by consular officers. . . My division never authorized the public release of this cable, and to the extent the cable was released to a visa applicant and/or the applicant's representative, it is my understanding that such a release would have been inadvertent and in error." (Doc. No. 56 at 3-4.)

7

"promote honest and open government, and to assure the existence of an informed citizenry in order to hold the governors accountable to the governed." *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. United States Dep't of Justice*, ("*Brennan Ctr.*"), 697 F.3d 184, 194 (2d Cir. 2012). "FOIA strongly favors a policy of disclosure." *Id.* In light of FOIA's broad disclosure policy, the exemptions are to be construed narrowly. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is "the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P.*, 649 F. Supp. 2d at 271. Summary judgment is proper "if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Brennan Ctr.*, 697 F.3d at 193 (*citing* Fed. R. Civ. P. 56(a)). The "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

Motions for summary judgment in the FOIA context are unique in that the government's affidavits are accorded a presumption of good faith. *Id.* "[S]o long as such affidavits supply facts indicating that the agency has conduct[ed] a thorough search and give[s] reasonably detailed explanations why any withheld documents fall within an exemption," the burden of proof will be satisfied and summary judgment is appropriate without discovery. *Id.*; *accord Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). An agency's determination that documents are under an enumerated exemption, however, is afforded no deference. *Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

To carry their burden, agencies also generally submit a *Vaughn* index, which is an "itemized listing of the non-disclosed records, describing each record and portion withheld, and providing a detailed justification for the agency's withholding, specifying the [applicable] FOIA exemption." *Nat'l Day Laborer Org. Network v. United States Immigration Customs Enforcement Agency*, 811 F. Supp. 2d 713, 733 (S.D.N.Y. 2011). "Conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases." *Coastal States Gas Corp. v. Department of Engery*, 617 F.2d 854, 861 (1980). A *Vaughn* index allows the opposing party "to contest the affidavit in an adversarial fashion," and to permit a court to effectively review the agency's redactions. *Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 293 (2d Cir. 1999).

### 2. CIS's Searches Were Adequate

To defend search efforts made in response to a FOIA request, the Government need only show that "its search was adequate." *Long v. Office of Personnel Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). "Adequacy" requires the Government to demonstrate that its search was "reasonably calculated to discover the requested documents." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). "This standard does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness: an agency 'is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents.'" *Adamowicz v. I.R.S.*, 06-CV-3919 (LAP) 552 F. Supp. 2d 355, 361 (S.D.N.Y. Mar. 31, 2008) (citing *Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 00-CV-4970 (GWG) 181 F. Supp. 2d 356, 368 (S.D.N.Y. Jan. 14, 2002).

9

Reasonableness may be established "solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith." *Id.* Where the agency's declarations indicate a reasonable search, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations . . ." in order to overcome summary judgment and proceed with discovery. *Carney*, 19 F.3d at 812 (2d Cir. 1994).

CIS's affidavits show that its searches were adequate. In accordance with internal procedures, CIS assigned Assadi's FOIA request to its Significant Interest Team ("SI Team"). (Doc. No. 11, Ex 1.1 at ¶ 8.) After reviewing the subject matter of the request, the SI Team determined that responsive documents might be located in the CIS Refugee, Asylum, and International Operations Directorate ("RAIO"), which plays a role in the conferral of citizenship and immigration benefits, fraud detection and national security, and intergovernmental liaisons. (*Id.*) RAIO searched its shared drive using relevant search terms and did not locate any responsive records. (*Id.* at ¶ 10.)

The SI Team turned next to the Fraud Detection and National Security Directorate ("FDNS"), which works to "enhance the integrity of the legal immigration system." (*Id.* at ¶ 11, 13). FDNS determined that any responsive records would be located in its case management system (Id. at ¶¶ 12, 14.) After locating responsive documents, FDNS forwarded them to the SI Team with the exception of twenty-three withheld pages. (*Id.* at ¶ 15.)

On July 23, 2012, CIS determined that a further search for responsive records in FDNS was necessary. (Doc. No. 11, Ex 1.1 at ¶ 20.) This search produced approximately thirty non-responsive pages. (Doc. No. 22 at ¶ 7.) CIS then contacted its Service Center Operations ("SCOPS") and Harrisonburg Records Facility ("HBG") and requested copies of all files

10

associated with receipt numbers found on documents produced in the initial search. (*Id.* at ¶ 8.) CIS identified six potentially responsive pages from this search. (*Id.*)

CIS then searched: 1) its Texas Service Center ("TSC") – the entity generally responsible for adjudicating visa applications submitted by Assadi's clients; and 2) all employees identified in a litigation hold memorandum authored by Central Law Division attorney Patsy Micale in response to Assadi's threat to commence separate, non-FOIA litigation. (*Id.* at ¶¶ 9-10.) The request to the TSC included the Micale memorandum and directed all personnel to whom it was sent to search for responsive documents. (Doc. No. 41 at ¶ 10-12.) The TSC provided approximately 1,300 pages of potentially responsive documents. (Id. at ¶ 11.) CIS completed processing the records on January 24, 2013, but had to repeat this process because the search cut-off date was incorrect. (Id. at ¶ 12.) After a delay caused by technological difficulties, (Doc. No. 22 at ¶¶ 11-16), CIS produced 1,375 pages to Assadi on August 21, 2013. (Doc. No. 35 at ¶ 4)

In efforts to rectify a previous oversight, CIS later directed Micale and certain additional attorneys in the "cc" line of her litigation hold memo to produce documents. These searches resulted in the production of approximately 1,000 additional documents by the end of February 2014. (Doc. No. 41 at ¶ 10.) CIS released this additional production on October 24, 2013. (Doc. No. 35 at ¶ 6 & n.3.,¶¶ 11-13; *Id.* at ¶ 11.)

Assadi argues that CIS's delay destroys the presumption of good faith normally accorded to the Government's declarations. (Doc. No. 54 at 4.) This argument has no merit. Although CIS's delay in conducting its searches was extensive, Plaintiff cites no case and the Court knows of no precedent suggesting that delay alone may serve as a basis for finding that the Government's search was inadequate. (Doc. No. 54 at 7-8.) CIS's affidavits show that CIS

conducted searches in locations where the agency reasonably expected responsive documents to be located. (Doc. Nos. 11, Ex. 1.1, 22, 35, 41, 50-53)

"General criticism" and allegations of delay are insufficient to demonstrate that CIS acted in bad faith. *See Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 33 (D.D.C. 2010) (agency's delay in responding to request and discrepancies concerning page counts not sufficient to show bad faith). To meet its burden, Assadi must offer more than "bare allegations." *Carney*, 19 F.3d at 813. "Therefore, "[p]urely speculative claims of bad faith will not suffice." *Ctr. for Constitutional Rights v. Dep't of Def.*, 968 F. Supp. 2d 623, 632 (S.D.N.Y. 2013*), aff'd sub nom. Ctr. for Constitutional Rights v. C.I.A.*, 765 F.3d 161 (2d Cir. 2014), *cert. denied*, 2015 WL 998615 (U.S. Mar. 9, 2015). Furthermore, each time CIS became aware of insufficiencies in its prior productions, it notified the Court and conducted additional searches. (Doc. No. 53 at ¶¶ 12-13; Doc. No. 42) For the foregoing reasons, the Court finds that CIS's searches were adequate.

### 3. FOIA Exemption 5 Privileges

#### a. Deliberative Process Privilege

CIS has asserted the applicability of FOIA Exemption 5 to *Vaughn* Entries 1-23 and 30. (Doc. No. 49) Congress "intended to incorporate into the FOIA all the normal civil discovery privileges." *Hopkins v. United States Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). When enacting FOIA, Congress recognized that "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to operate in a fishbowl." *Id.* at 84; *accord Env't Prot. Agency v. Mink*, 410 U.S. 73, 87 (1973). FOIA Exemption 5, frequently referred to as the "deliberative process privilege," exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §

12

552(b)(5). Documents within the privilege must be: 1) "'predecisional,' that is, prepared in order to assist an agency decisionmaker in arriving at his decision; and [2)] 'deliberative,' that is, actually related to the process by which policies are formulated." *Hopkins*, 929 F.2d at 84. The privilege thus protects the "decision making processes of government agencies, and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Labor Relations Bd. v. Sear, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

### b. Attorney-Client Privilege and Work Product Doctrine

CIS has asserted the applicability of the attorney-client privilege and the work product doctrine to *Vaughn* Entries 1-11, 13-18, 20-23, 28 and 29. (Doc. No. 49) FOIA Exemption 5 incorporates the attorney-client privilege and the work product doctrine. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975). The attorney-client privilege protects "confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). The privilege applies if there was: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419.

#### (1) *Arabnia* Entries

*Vaughn* Entries 1-4, 6-8, 11, 13-17, 22, and 27 are emails concerning pending litigation against DOS in the Southern District of New York, *Arabnia v. Dep't of State*, No. 10-CV-3737 (S.D.N.Y.), which involve DOS personnel ("*Arabnia* Entries"). These entries are protected by the deliberative process privilege, the attorney-client privilege, and work product doctrine.

The *Vaughn* Index and Hackett Declaration describe the *Arabnia* Entries in detail as conversations between attorneys and government personnel in the furtherance of decision-making in the *Arabnia* action. (Doc. No. 51, Ex. A; Doc. No. 50) The *Arabnia* Entries are pre-decisional in that they "contain[] discussions between and among Department officials and their attorneys regarding proposed next steps in the case, and those discussions [sought] input regarding the proposed final action to be taken with respect to certain issues in the lawsuit." (Doc. No. 50 at 9, 11, 12, 13, 15, 16 18.) *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). They are deliberative in that they are subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Furthermore, they contain "candid discussions" and guidance which were "an important, if not essential" part of the process by which DOS decisions about the *Arabnia* case were formulated. (*Id.*) *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 483 (2d Cir. 1999). The Court thus finds that the *Arabnia* Entries are protected by the deliberative process privilege.

The *Vaughn* Index and Hackett Declaration also indicate that the *Arabnia* Entries were "confidential communications undertaken for the purposes of seeking and/or providing legal advice between client U.S. Government officials and Assistant U.S. Attorneys and/or agency counsel, all of whom were professionally charged with offering legal advice to those client officials on the issues involved." (Doc. No. 50 at 10.) Furthermore, the emails were prepared "by or at the request of attorneys in connection with then-pending litigation." *In re Cnty. of Erie*, 473 F.3d at 419. (Doc. No. 50 at 10.) The Court thus finds that the *Arabnia* Entries are protected by the attorney-client privilege and the work product doctrine. *Id.* at 418.

(2) Assadi Entries

*Vaughn* Entries 9, 10, 12, 18, 19, 21, 23, 28, 29 and 30 are emails and notes pertaining to Assadi that fall into two categories: 1) lawsuits filed or contemplated by Assadi against the State Department; and 2) the pending visa applications of Assadi's clients. ("Assadi Entries") (Doc. No. 51, Ex. A)

The *Vaughn* Index describes Entries 9, 10, 21, 28 and 29 in detail as conversations between attorneys and government personnel in furtherance of decision-making in the Assadi actions. (*Id.*; Doc. No. 50*)* Entry 30 is described as a set of handwritten notes identifying "case-specific information reflecting the thought process of an Agency officer concerning pending and potential litigation." Entries 9, 10, 21 and 30 are pre-decisional in that they "contain[] the details of an inter-agency discussion between . . . attorneys who have shared responsibilities regarding immigration matters regarding proposed next steps in a pending case" (Doc. No. 50 at 17, 19.) *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). They are deliberative in that they are subjective documents which reflect the personal opinions of the attorneys rather than the policy of the agency, and are an integral part of the process by which DOS decisions about the Assadi actions were formulated. (*Id.*) *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 483 (2d Cir. 1999). The Court thus finds that Entries 9, 10, 21, 28 and 29 are protected by the deliberative process privilege.

*Vaughn* Entries 9 and 10 state that the redacted portions of the emails "contain[] the AUSA's mental impressions and thought processes, strategy, and assessment of another contemplated lawsuit by Plaintiff. (Doc 51, Ex. A) Entry 10 separately states that the redaction includes an attorney's "summary of the potential issues in the contemplated lawsuit, as well as inter-agency activities after an October 2010 meeting with Plaintiff's counsel . . . " (*Id.*) Entry 21

states that the redacted portion contains "advice and mental impressions concerning cases involving Mr. Assadi." (*Id.*) Entry 28 states that the redaction includes an attorney's "guidance and mental impressions . . . and appropriate internal agency action in the event of such a lawsuit." Entry 29 states that the redaction "discusses Agency procedure when dealing with a specific legal issue associated with threatened litigation." (*Id.*) These Entries are protected by the attorney-client privilege and the work product doctrine in that they include the advice of counsel and communications seeking legal advice. *In re Cnty. of Erie*, 473 F.3d at 418. Furthermore, the emails include the mental impressions and thought processes of attorneys in connection with litigation which were intended to be kept confidential. *Id.* at 419. The Court this finds that Entries 9, 10, 21, 28 and 29 are protected by the attorney-client privilege and the work product doctrine.

The *Vaughn* Index describes Entries 12, 18, 19, and 23 in detail as emails discussing the processing of immigrant petitions filed by Mr. Assadi. (Doc. No. 51. Ex. A) These entries are pre-decisional in that they were prepared in order to assist CIS adjudicators in reaching their final decision on petitions for immigration benefits. (*Id.*) *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). They are deliberative in that they are subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. The documents are also deliberative in that they "form[] an important, if not essential, link in [the agency's] consultative process." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 483 (2d Cir. 1999). The Court thus finds that Entries 12, 18, 19, and 23 are protected by the deliberative process privilege.

*Vaughn* Entries 18 and 23 also state that the redacted portions of the emails contained "the thoughts and recommendations of USCIS counsel to State Department personnel" (Entry 18) and "information and mental impressions" pertaining to "CIS's internal handling of certain cases and

16

the status of those cases, including upcoming action on two of the cases" for another attorney's "consideration in drafting a response to a letter from Mr. Assadi." (Entry 23) (*Id.*) These Entries are protected by the attorney-client privilege and the work product doctrine in that they include the advice of counsel and communications seeking legal advice. *In re Cnty. of Erie*, 473 F.3d at 418. Furthermore, the emails include the mental impressions and thought processes of attorneys in connection with litigation which were intended to be kept confidential. *Id.* at 419. The Court thus finds that Entries 18 and 23 are protected by the attorney-client privilege and the work product doctrine.

(3) Visa Application Entries

*Vaughn* Entries 5 and 20 are documents pertaining to the visa applications of specific individuals. Entry 5 is described as a document containing "deliberative information concerning the Visa applications of two individuals." Entry 20 is described as an email sent to the CIS Texas Service Center litigation inbox in which an immigration officer "seeks advice and guidance concerning an issue pertaining to an electronic signature on a particular I-140 petition" and the officer's "recommendation concerning treatment of the petition." These entries are pre-decisional in that they "discuss[] potential next steps with respect to two specific pending visa applications in the context of ongoing litigation" (Doc. No. 50 at 8.) *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). They are deliberative in that they are subjective documents which reflect the personal opinions of the attorneys involved rather than the policy of the agency and "form[] an important, if not essential, link in [the agency's] consultative process." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 483 (2d Cir. 1999). The Court thus finds that Entries 5 and 20 are protected by the deliberative process privilege.

17

These Entries are also protected by the attorney-client privilege and the work product doctrine in that they include the advice of counsel and communications seeking legal advice. *In re Cnty. of Erie*, 473 F.3d at 418. Furthermore, the emails include the mental impressions and thought processes of attorneys in connection with particular visa applications which were intended to be kept confidential. *Id.* at 419.

### 5. FOIA Exemption 3

CIS has asserted the applicability of FOIA Exemption 3 to *Vaughn* Entries 1-8, 11-19, 22-25, and 27 ("Entries"). (Doc. No. 49 at 31.) FOIA Exemption 3 permits an agency to withhold documents if another statute exempts them from disclosure "in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A). The exemption applies "if a disclosure-prohibiting statute exists and the withheld information falls within the coverage of the statute." *Perry-Torres v. U.S. Dep't of State*, 404 F. Supp. 2d 140, 143 (D.D.C. 2005). The court does not scrutinize the content of the withheld document, rather, as long as the "factual nature of the document[] [is] clearly established on the record," "the court inquire[s] no further." *Id.*

CIS asserts that the Entries must be withheld under 8 U.S.C. § 1202(f), which states that Department of State records "pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States ..." 8 U.S.C. § 1202(f). Section 1202(f) qualifies as a withholding statute under FOIA Exemption 3. *See Holy Spirit Ass'n for the Unification of World Christianity*, 526 F. Supp. 1022, 1031 (S.D.N.Y. 1981) (finding that 8 U.S.C. § 1202(f) qualifies as an "exempting statute" under FOIA Exemption 3).

The *Vaughn* Index and supporting declaration identify the Entries as emails between Department of Justice, DOS and CIS personnel pertaining to specific visa applications that were the subject of pending litigation. (Doc. No. 50) (Doc. No. 50 at para 19-28.; Doc. No. 51, Ex. A) Entry 25, the only document over which CIS asserts exemption 3 and no other exemptions, is described as a "draft review memorandum . . . intended to accompany a specific visa petition being sent to posts to advise of certain concerns about a class of visa applicants." (Doc. No. 50 at 7.) Having reviewed CIS's submissions, this document is characteristic of the others withheld under Exemption 3. *Vaughn* Entries 1-8, 11-19, 22-25, and 27 pertain to the issuance of visas, as they were intended to provide advice, assessments, and recommendations on the issuance of visas. *See Mizrahi v. Gonzales*, 492 F.3d 156, 159 (2d Cir. 2007) (interpreting "pertain to" as equivalent to "relate to"). Therefore the Court finds that Entries 1-8, 11-19, 22-25 and 27 must remain confidential pursuant to 8 U.S.C. § 1202(f).

### 6. Relevance

CIS withheld Entry 26, describing it as a memorandum containing "descriptions of cases in litigation involving USCIS" from which CIS redacted portions that were "non-responsive to Plaintiff's FOIA request." (Doc. No. 51, Ex. A at 16.) Assadi did not dispute that Entry 26 was outside the scope of Plaintiff's request and thus, the Court need not reach this issue.

## IV. CONCLUSION

For the foregoing reasons, CIS's motion for summary judgment is **GRANTED** and Assadi's request for *in camera* review is **DENIED**. This motion having been resolved, the Complaint in this action is **DISMISSED** and the Clerk of the Court is directed to **CLOSE** the case.

**SO ORDERED this 30th day of March 2015.**
**New York, New York**

*/s/ Ronald L. Ellis*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**